UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY FENWICK, | ) | CASE NO. 5:19-cv-2534 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kelly Fenwick ("Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.    Procedural History

On October 28, 2015, Plaintiff filed her application for SSI, alleging a disability onset date of January 1, 2012. (R. 8, Transcript ("Tr.") 208-211). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 120-22, 124-25, 128-30). Plaintiff participated in the hearing on October 5, 2016,

was represented by counsel, and testified. (Tr. 34-82). A vocational expert ("VE") also participated and testified. (Tr. 34-82). On October 22, 2018, the ALJ found Plaintiff not disabled. (Tr.12-23). On August 27, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 8, 11). Plaintiff asserts that the ALJ's decision regarding Plaintiff's maximum residual functional capacity ("RFC") is not supported by substantial evidence. (R. 8, PageID #759).

## II.     Relevant Facts
### A.     Relevant Medical Evidence[1]
#### 1.     Treatment Records

On December 4, 2015, Dr. Abdul Rheem-Ghanem examined Plaintiff for complaints of knee and back pain, attributed to "slipp[ing] and hit[ting] both knees and also lower back" four months prior. (Tr. 313). The doctor's assessment indicated "Aleve as needed" and "stretching as tolerated." *Id.* On January 20, 2016, the doctor indicated Plaintiff complained of chronic low back pain and neck pain (Tr. 317); he prescribed naproxen and referred Plaintiff to physical therapy. (Tr. 318). Dr. Rheem-Ghanem noted Plaintiff was prescribed inhalers for pulmonary emphysema. (Tr. 319).

On January 26, 2016, a physical therapist completed a "Disability Certificate" stating that Plaintiff has low back pain and is unable to work. (Tr. 302).

On February 2, 2016, Dr. Cheryl Benson-Blankenship conducted a consultative

---

[1]   The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

examination, upon referral from the Ohio Division of Disability Determination "for the evaluation of the presence or absence of a mental disorder and for evaluation of any resulting limitations in mental activities required for work." (Tr. 295-299). Dr. Benson-Blankenship opined that Plaintiff may have some difficulty understanding and applying instructions consistent with a low level of intellectual functioning, and that she may have some difficulty conforming to social expectations in the workplace. (Tr. 299). Dr. Benson-Blankenship further noted that Plaintiff had poor stress tolerance with reduced function. (*Id.*).

On February 3, 2016, Plaintiff again saw Dr. Rheem-Ghanem for chronic low back pain, shoulder pain and knee pain. (Tr. 323). On examination, Plaintiff had limited extension of her back due to pain, but she had full flexion and normal rotation. (Tr. 324). The doctor assessed anxiety, depression, back pain, and osteoarthritis of the knees. (Tr. 325).

On March 7, 2016, Dr. Eulogio Sioson, M.D. performed a consultative exam. (Tr. 333-338). Plaintiff reported pain in her knees and hips, with knee pain after walking half a block, standing 30 minutes, going up and down a flight of stairs and sitting for an hour. (Tr. 333). She noted a history of asthma, triggered by stress and temperature changes, that responded to inhalers (Tr. 334).

Dr. Sioson noted Plaintiff walked normally and did not use a cane; however, she lost balance while performing heel/toe walking and complained of knee pain rising from a half squat. She had poor breath sounds but no wheezing. (*Id.*). Dr. Sioson assessed back/joint pain without radiculopathy, gross deformity or inflammatory changes in the joints; and Asthma/Chronic Obstructive Pulmonary Disease (COPD) without labored breathing and spO2 of 98% on room air at rest. (*Id.*). Dr. Sioson opined that "if one considers limitation of range of motion from pain and above findings, work related activities could be limited to light or sedentary work." (*Id.*).

3

On August 9, 2016, Dr. Blankenship conducted a second evaluation. (Tr. 366-370). Plaintiff continued to have symptoms of depression, with low energy and poor sleep (*Id.*). Plaintiff also explained she had memory loss. (Tr. 367). Dr. Blankenship opined that the claimant may have some difficulties understanding, remembering and carrying out instructions at the present time, but unlike her previous opinion, she indicated that the claimant's ability to understand and apply instructions in a workplace setting is consistent with average intellectual functioning. (Tr. 370).

On October 6, 2016, Dr. Andrew Herman examined Plaintiff for COPD and anxiety disorder, among other conditions. (Tr. 387). He noted Plaintiff had anxiety, and breathing issues, requiring her to use a nebulizer machine and inhaler. (*Id.*). Dr Herman ordered a pulmonary consultation and physical therapy. (*Id.*).

On January 23, 2017, Rachel Lester, CNP examined Plaintiff for low back pain, a tailbone injury, and Hepatitis C. (Tr. 376). Plaintiff was referred to rheumatology and Hepatitis C was suspected to be a cause of Plaintiff's joint pain as well as possibly rheumatoid arthritis. (Tr. 377).

On February 22, 2017, Plaintiff attended a physical therapy initial consultation with James Leister, P.T. (Tr. 407). Plaintiff's goal was to ambulate inside and outside the home and participate in activities of daily living with minimal help. (*Id.*). The PT recommended two to three sessions per week for two months. (*Id.*).

On March 2, 2017, Plaintiff underwent an abdominal MRI, due to "history of hepatitis C and lesion noted in the liver on recent ultrasound." (Tr. 502). The results identified a hemangioma lateral segment left lobe of the liver, "no mass lesion is identified in the region of the caudate lobe at the site of concern on ultrasound." (*Id.*).

At a March 5, 2017 physical therapy evaluation, Plaintiff reported back, knee, and neck

pain. (Tr. 409). The physical therapist noted that Plaintiff was not performing any type of resistive or strengthening exercises. (*Id.*). The physical therapists set a course of treatment which required two to three visits a week. (Tr. 410).

On April 14, 2017, Dr. Herman again examined Plaintiff for shoulder and back pain and to review disability paperwork. (Tr. 517). Dr. Herman referred Plaintiff to physical therapy and ordered a functional capacity examination to assess Plaintiff's functioning and to assist in the completion of disability paperwork. (*Id.*).

On May 24, 2017, Physical Therapist G. Kurt Swanson conducted a functional capacity assessment. (Tr. 522-531). PT Swanson opined that Plaintiff had the ability to perform within a medium physical demand and work full time but would need to alternate sitting and standing. (Tr. 522). PT Swanson noted consistent effort through the majority of the test, suggestive of full and consistent effort (Tr. 522). Plaintiff's pain reports were considered reliable. (Tr. 524).

On October 30, 2017, Dr. Nikita Hedge, rheumatologist, examined Plaintiff. (Tr. 616). Plaintiff presented with chronic generalized pain, mostly in her knees, neck and back. (Tr. 616). She had a normal motor and sensory exam as well as normal gait, power and coordination. (Tr. 620). There was knee tenderness, "slight impingement left hip" and "tenderness over the cervical and lumbar spine." (*Id.*). Dr. Hedge assessed Plaintiff with chronic Hepatitis C and primary osteoarthritis in both knees. (Tr. 620).

On November 24, 2017, Plaintiff underwent an X-ray of her left knee and spine. (Tr. 593, 613). The knee x-ray identified no abnormalities and the "impression" reported "negative knee." (Tr. 593). X-rays of the cervical spine showed severe C-5 C6 degenerative disc disease with loss of disc height and end plate osteophyte formation and moderate C6 C7 degenerative disc disease. (Tr. 594).

5

On May 15, 2018 Plaintiff was admitted to the hospital with shortness of breath, chest pressure and dizziness. (Tr. 663). The clinical impression was COPD with acute exacerbation. (Tr. 669).

**2.**      **Medical Opinions Concerning Plaintiff's Functional Limitations**

At the initial level, state agency physician, Dr. Gerald Klyop, opined that Plaintiff could perform light duty work. (Tr. 83-96). In addition, Dr. Klyop opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk six to eight hours a day, and sit for a total of six hours in an eight hour workday, with unlimited push and/or pull. (Tr. 92). She could frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl. (Tr. 93). She could occasionally climb ladders/ropes/scaffolds. (Tr. 93). She was limited to frequent overhead reaching and fine manipulation due to loss of range of movement in both shoulders and hands. (Tr. 93).

At the reconsideration level, state agency physician, Dr. Esberdado Villanueva, opined that Plaintiff could perform light duty work. (Tr. 110). Dr. Villanueva opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk six to eight hours a day, sit for a total of six hours in an eight hour workday, with unlimited push and/or pull. (Tr. 110-11). She could frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl. (Tr. 111). She could occasionally climb ladders/ropes/scaffolds. (Tr. 111). She was limited to frequent overhead reaching and fine manipulation due to loss of range of movement in both shoulders and hands. (Tr. 111-12).

**B.**      **Relevant Hearing Testimony**

At the October 5, 2018 hearing, Plaintiff testified as follows:

6

Plaintiff completed the ninth grade (Tr. 41), and she later obtained her state nursing license. (Tr. 42). She stated that she was not currently employed. (Tr. 42). Plaintiff explained that the main reason she could not work was due to "my breathing. The lower part of my back if I stand or sit for too long. My knees, if I try to bend and then try to get back up, it hurts. I can't write like I used to" because her hands cramped. (Tr. 50).

Plaintiff testified that her breathing issues and shortness of breath were triggered by anxiety, certain fumes, smoking, humidity and extreme cold. (Tr. 51-52). Plaintiff explained that she used a rescue inhaler two to three times a week and used a Nebulizer every other day. (Tr. 52-53). She stated that her inhalers and nebulizer were helpful in managing her symptoms. (Tr. 53).

Plaintiff stated that the base of her neck, left shoulder and lower back hurt, and described the pain as a pinching and burning sensation. (Tr. 54). She testified that she took cyclobenzaprine for this pain, which made her feel "kind of loopy sometimes and tired." (Tr. 55). Plaintiff testified that her knees hurt when she sat for too long, or if she bent to pick up something, and when climbing stairs. (Tr. 56). Plaintiff further testified that her hands cramped up when she tried to "wash a jar, open a can, simple, everyday simple stuff." (Tr. 57). When she mentioned the hand cramps to her doctor, she was referred for a psychological evaluation due to stress. (Tr. 57). Plaintiff explained that she struggled with depression, but did not feel hopelessness. (Tr. 57). She noted cyclobenzaprine helped with stress, but she quit taking any other medication for anxiety or depression. (Tr. 57).

Plaintiff testified that she had issues in the past with drinking too much alcohol but had reduced consumption in the past few years because she had first stage liver disease. (Tr. 60). She testified that she used marijuana twice a day because "in the morning…it relaxes [her] enough that [she] can at least accomplish something before [she] get[s] overly tired or out of breath" and to

help her eat and sleep. (Tr. 61).

Regarding daily activities, Plaintiff testified that she cared for her two cats, and could attend to her own personal care, although she needed help putting on her shoes. (Tr. 62). She could not vacuum and could only do a few dishes before her hands cramped. (Tr. 63). Her husband did most of the cooking, although she could prepare a simple meal. (Tr. 63). Plaintiff stated that her husband sent their laundry out because they did not have a washer or dryer. (Tr. 63). She could shop in smaller stores, depending on the amount of walking involved. (Tr. 64). She spent time on her tablet and with her family. (Tr. 64) Plaintiff testified that she had trouble sleeping, which affected her energy levels. (Tr. 70). She noted that Hepatitis C made her tired, and she had memory problems. (Tr. 71-72). Plaintiff testified that she could walk, but not for "a distance[,]" and she took her time, so she did not get out of breath quickly. (Tr. 72-73). The longer she stood, the longer her back and knees hurt. (Tr. 73). She also testified that she was limited in lifting and explained that it was hard for her to lift the kitty litter bag. (Tr. 73).

The ALJ posed the following hypothetical question to the VE, during the administrative hearing:

> I'd like you now to assume a hypothetical individual of the claimant's age and education and with the past jobs that you've described. I would also like you to assume that the individual can perform light work as defined in the regulations with the following additional limitations.
>
> She can occasionally climb ladders, ropes or scaffolds, and can frequently climb ramps or stairs. She can frequently balance, stoop, kneel, crouch or crawl. She must avoid concentrated exposure to extreme temperatures, humidity, wetness, poor ventilation and pulmonary irritants such as dust, odors, fumes and gases.
>
> She is able to perform detailed but not complex tasks, meaning that she can perform semi-skilled work, but not at a production rate pace, and not with strict production quotas. She can interact superficially with others, with superficial defined to mean no responsibility for interactions concerning sales, arbitration, negotiation, confrontation, conflict resolution or responsibility for the safety or welfare of

others.

> She can adapt to occasional changes in the work setting so long as those changes are explained in advance and implemented gradually.

(Tr. 75-76).

The VE testified that such a hypothetical individual could not perform Plaintiff's past work.[2] (Tr. 76). The VE explained that the hypothetical individual could perform work of a "sorter, DOT 222.687-014, unskilled, SVP of 2, light exertion with over 300,000 positions in the national economy[;]" "a marker, DOT 209.587-034, unskilled, SVP of 2, light exertion with over 100,000 positions in the national economy[;]" and "a garment bagger, DOT 920.687-018, unskilled...SVP of 1, light exertion with over 10,000 positions in the national economy." (Tr. 76).

In response to a second hypothetical question, the VE testified that the hypothetical individual could still perform the work of a sorter, marker, or garment bagger with "the additional limitation that the individual can frequently finger, and frequently reach overhead with her bilateral upper extremities." (Tr. 77). The VE confirmed, in response to a third question, that such an individual could still perform those same jobs if the previous hypothetical questions included the additional limitation that the individual can perform only simple, routine tasks. (Tr. 77).

The ALJ's next hypothetical included all the limitations from the third hypothetical, but added additional limitations that: "The individual can frequently handle with her bilateral upper extremities. She can never climb ladders, ropes or scaffolds, and can occasionally climb ramps or stairs. She can occasionally stoop, kneel, crouch or crawl." (Tr. 77-78). The VE testified that the

---

[2] Plaintiff's past work included "dry wall finisher, [Dictionary of Occupational Titles] DOT 842.664-010, skilled, SVP of 5, medium exertion, very heavy as performed" and "power washer, DOT 503.685-030, unskilled, SVP of 2, medium exertion per DOT, heavy as performed." (Tr. 75).

individual could still perform the tasks of garment bagger, sorter, and marker. (Tr. 78). In addition, the VE noted that, based on her education and experience, an employer generally would tolerate an employee being "off task no greater than 15% of the workday" and, for an unskilled position, one could typically miss no more than one day per month. (Tr. 78).

Plaintiff's attorney modified the hypothetical to occasional pulmonary irritant exposure, occasional reaching, occasional kneeling and bending, and occasional gross, fine manipulation bilaterally. (Tr. 79). The VE testified that with those modifications, the hypothetical individual could not perform the tasks of garment bagger, sorter, or marker. (Tr. 79). The VE testified that no light jobs remain with the modified hypothetical. (Tr. 79).

### III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

10

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.     Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since October 28, 2015, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: degenerative disc disease/osteoarthritis of the cervical spine, asthma/COPD, major depressive disorder, generalized anxiety disorder, nicotine dependency, alcohol dependency, cannabis dependency and cocaine dependency in remission (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can frequently handle, finger and reach overhead with her bilateral upper extremities. She can occasionally climb ramps or stairs, but can never climb ladders, ropes or scaffolds. She can frequently balance, and occasionally stoop, kneel,

crouch or crawl. She must avoid concentrated exposure to extreme temperatures, humidity, wetness, poor ventilation and pulmonary irritants, such as dust, odors, fumes, or gases. She is able to perform detailed but not complex tasks, meaning that she can perform semiskilled, work, but not at a production rate pace and not with strict production quotas. She can interact superficially with others, with superficial defined to mean no responsibility for interactions concerning sales, arbitration, negotiation, confrontation, conflict resolution, or responsibility for the safety and welfare of others. She can adapt to occasional changes in the work setting so long as those changes are explained in advance and implemented gradually

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on *** 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 28, 2015, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-27).

## V.     Law and Analysis
### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a

whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

Plaintiff contends that the ALJ's decision and the RFC are not supported by substantial evidence because: 1) "she ignored pertinent results of the objective functional capacity evaluation (FCE)" and 2) "she relied on vocational expert testimony in response to an incomplete and inaccurate hypothetical question." (R. 9, PageID # 767).

### 1.    Opinion of Physical Therapist Swanson

Plaintiff contends that the ALJ did not properly credit findings from the FCE conducted by Physical Therapist Swanson, (Tr. 522-531), and failed to give good and valid reasons for not doing so. (R. 9, PageID # 769). The Commissioner argues that FCE is not a "medical opinion" as defined by the Social Security Regulations, and therefore the ALJ had no burden to analyze the opinion or

provide justifications for the weight given. (R. 11, PageID# 782).

Indeed, a physical therapist is a "non-acceptable medical source," and an ALJ is "not required to give [a physical therapist's] opinion any particular weight." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249 (6ᵗʰ Cir. 2015); *accord Knott v, Comm'r of Soc. Sec.*, No. 5:18-CV-1226, 2019 WL 4143885, at *11 (N.D. Ohio June 27, 2019), *report and recommendation adopted*, 2019 WL 4142596 (N.D. Ohio Aug. 30, 2019); *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *4 (E.D. Mich. June 10, 2019), *report and recommendation adopted*, 2019 WL 2647260 (E.D. Mich. June 27, 2019); *see also Perschka v. Comm'r of Soc. Sec.*, 411 Fed. App'x 781, 787 (6ᵗʰ Cir. 2010) (regulations do not include physical therapists in the list of acceptable medical sources). In other words, contrary to Plaintiff's assertion, there is no requirement that the ALJ satisfy the good reasons standard for the weight assigned to a physical therapist, because that standard "applies only to 'treating sources' (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation)." *Roberts v. Comm'r of Soc. Sec.*, No. 1:14-CV-355, 2015 WL 3936177, at *4 (W.D. Mich. June 26, 2015).

Although physical therapists are not "acceptable medical sources" under the regulations, Social Security Ruling ("SSR") 06-03p notes that information from "other sources," such as physical therapists, "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 SSR LEXIS 5 at *8, 17 (Aug. 9, 2006). "In evaluating the opinions from 'other sources,' an ALJ should consider various factors, 'including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion.'" *Hirko v. Colvin*, No. 1:15cv580, 2016 U.S. Dist. LEXIS 114821, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)).

14

SSR 06-03p explains the consideration an ALJ must give to opinions from "other sources" as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

SSR 06–03P, 2006 SSR LEXIS 5, at *15-6 (emphasis added).

Pursuant to this guidance, "'it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity.'" *Hirko,* 2016 U.S. Dist. LEXIS 114821, 2016 WL 4486852 at *3 (citing *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 U.S. Dist. LEXIS 42060, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014)).

"The Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 U.S. Dist LEXIS 42060, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 U.S. LEXIS 46702, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008). An ALJ satisfies the applicable legal standard if the

ALJ addresses the "other source" opinion and gives reasons for crediting or not crediting the opinion. *Hirko*, 2016 U.S. Dist. LEXIS 114821, 2016 WL 4486852 at *3 (quoting *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 U.S. Dist. LEXIS 99221, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015).

Here the ALJ did not ignore Physical Therapist Swanson's opinion or silently consider it. Instead, the ALJ provided the following explanation concerning the weight she accorded:

> Therefore, Dr. Herman referred her to physical therapy for a functional capacity examination (Ex. 14F, 6-7). Accordingly, the claimant underwent a residual functional capacity assessment on May 24, 2017, at which time G. Kurt Swanson, P.T., MPT, assessed that the claimant had the ability to perform within a medium physical demand and work full time while needing to alternate sitting and standing. He noted that throughout testing, the claimant reported reliable pain ratings 95% of the time, which suggested pain as a limiting factor (Ex. 16F, 2).
>
> …
>
> G. Kurt Swanson, PT completed a residual functional capacity assessment on May 24, 2017 in which he opined the claimant could perform a medium level of exertion. The undersigned gives some weight to the assessment, which is described in detail and is based on direct observation of the claimant. However, based on evidence of multilevel degenerative disc disease, including severe at C5-6, multilevel facet arthritis of the cervical spine, the claimant is limited to lifting and carrying less than the demands of medium work.
>
> …
>
> In sum, the above residual functional capacity assessment is supported by evidence that the claimant has limitations lifting and carrying more than 20 pounds based on diagnostic imaging of her cervical spine. However, imaging by x-ray of her lumbar spine, knees, hands and pelvis were normal. Throughout the evidence of record, the claimant is noted to have normal strength in her lower extremities. While undergoing podiatric treatment her strength was 5/5 and her gait was normal (Ex. 15F, 2). While she retains a normal gait to walk and stand six hours in an 8-hour workday, the evidence shows exposure to environmental irritants exacerbates her severe

> impairment of COPD; thus, the claimant must avoid exposure to irritants provided in the residual functional capacity. While she has psychological limitations, they are not work preclusive. The claimant's social limitations are accommodated by superficial interaction without demands in which she would be required to intervene or resolve complex situations in the workplace.

(Tr. 22, 25, 26).

The ALJ clearly considered this other source information, noted it was a one-time FCE upon referral, that it was detailed and based upon direct observation, and explained that PT Swanson's assessment was inconsistent with the record evidence. As the ALJ determined that Plaintiff was *more* limited than PT Swanson's assessment concluded, the ALJ only afforded it some weight. That is more than enough to satisfy the pertinent regulations and legal standard for evaluating other source evidence. Although Plaintiff recognizes that "it is true that [PT Swanson's] results say Plaintiff is limited to a medium RFC," she argues that the report itself indicates more significant limitations. (R. 9, PageID# 768). To support that argument, Plaintiff asserts that "the results of this testing also document additional and significant limitations, including that Plaintiff can perform only occasionally do [sic] fine/gross coordination, only occasionally performing firm grasping/pinching, can only occasional[ly] bend and squat, can only occasionally walk, and at a slow pace and can only occasionally reach forward (Tr. 522-531, 523)." (R. 9, PageID# 768).

By arguing that the ALJ should have given *more* weight to PT Swanson's assessment, Plaintiff would have the ALJ ignore Swanson's conclusion that Plaintiff could perform full time work at a medium RFC, but parse through the report to pick and choose the limitations that support a lower exertion level from the report's conclusion. In essence, Plaintiff seeks to fault the ALJ for not rewriting PT Swanson's assessment; and she invites this court to re-weigh the evidence in her

17

favor. Although Plaintiff takes issue with the ALJ's explanation, the ALJ's decision reasonably identifies the inconsistencies between Swanson's medium RFC determination and record evidence establishing the limitations set forth in the ALJ's decision and assessed RFC.

Moreover, it is not this Court's function to re-weigh the opinions of record. This court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).

It is apparent from the ALJ's decision, however, that she considered the full record in reaching a reasoned RFC. The decision explains, for example:

> The undersigned considered evidence supporting limitations walking and standing. However, neither clinical examination nor diagnostic imaging supports lumbar or knee abnormalities compromising the claimant's ability to walk and stand. While the evidence supports limitations lifting and carrying in respect to abnormality of her cervical spine, it does not support greater limitation than provided in the residual functional capacity above. In respect to complaints of pain in her hands and shoulder, the undersigned limited the claimant to frequently handle, finger and reach overhead, commensurate with imaging and examination.

(Tr. 23). The ALJ determined the RFC after considering pertinent record evidence as well as the aforementioned PT's assessment. This Court finds such conclusion supported by substantial evidence; and Plaintiff's argument to the contrary lacks merit.

For these reasons, the court recommends that the first assignment of error be rejected.

## 2.    The Hypothetical and the ALJ's RFC Determination

Plaintiff contends that "the ALJ's decision is not supported by substantial evidence because the ALJ adopted vocational expert responses to an incomplete hypothetical question to support her

18

decision to deny benefits." (R. 9, PageID# 773). Plaintiff argues that the RFC (and therefore the ALJ's hypothetical question) failed to account for Physical Therapist Swanson's assessment. (R. 9, PageID# 773). According to Plaintiff, the ALJ's conclusions regarding her RFC assessment is not an accurate depiction of her work-related limitations. (R. 9, PageID# 77). Specifically, Plaintiff contends that the ALJ should have reduced the RFC limiting Plaintiff to light work with frequent reaching and handling and occasional kneeling, crouching and crawling by including further restrictions to light work, with only occasional reaching bilaterally, occasional handling, kneeling and bending. (Tr. 19; R. 9, PageID# 774).

A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[3] The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c). At the fifth and final step of the disability analysis, if a claimant cannot perform past relevant work, the ALJ must determine whether the claimant can adjust to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009).

---

[3] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

An ALJ's finding that a claimant can perform a significant number of jobs must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Testimony from a vocational expert—in response to a hypothetical question—may constitute such substantial evidence, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010) (same), *adopted by* 2011 WL 441518 (Feb. 4, 2011).

Here again, Plaintiff focuses on PT Swanson's assessment, acknowledges that the ALJ discounted the assessment that Plaintiff could perform full time work at a medium exertion level, but seeks to fault the ALJ for not incorporating the PT's assessment notes and further restricting Plaintiff's RFC. (R. 9, PageID# 763, 768, 774). However, as noted above, the ALJ properly considered the PT's evaluation and record evidence in assessing the RFC. Although Plaintiff

disagrees with the ALJ's analysis regarding Swanson's opinion, this Court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.").

Moreover, a "plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination." *White v. Colvin*, No. 3:13-cv-02106, 2014 U.S. Dist. LEXIS 142152, at *17-18 (N.D. Ohio July 21, 2014). The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected, and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009).

Although Plaintiff believes more restrictive limitations could have been assessed based on the record, that belief does not establish a violation of the substantial evidence standard. Plaintiff has not identified a treating provider opinion or other medical opinion from an acceptable medical source that supports a more reduced RFC than the ALJ assessed. An ALJ need only incorporate those limitations he or she accepted as credible into the hypothetical questioning to the VE. *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). As the ALJ did not find that further reaching, handling or bending restrictions were warranted, the Plaintiff has identified no error; and the ALJ could rely on the VE's testimony that Plaintiff could perform a significant

number of jobs in the national economy if she were as limited as set forth in the RFC, which corresponds to the hypothetical questioning posed to the VE. (Tr. 75-78).

The ALJ's decision, as explained above, considered pertinent record evidence, applied the proper legal standards, and supported the RFC with substantial evidence. Therefore, it is recommended that the second assignment of error be rejected.

## VI.    Conclusion

It is recommended that the Commissioner's final decision be AFFIRMED for the foregoing reasons.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 5, 2021

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).